**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

XIAOCHUN GAO,

                 Plaintiff,

         -against-

LA VIE EN SZECHUAN RESTAURANT CORP.,
et al.

               Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/18/2024_

**19-CV-2515 (JPC)(KHP)**

**REPORT AND RECOMMENDATION**
**ON DAMAGES INQUEST AND**
**MOTION FOR ATTORNEYS' FEES**

**TO: THE HONORABLE JOHN P. CRONAN, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Xiaochun Gao formerly worked as a server at two Chinese restaurants, Savour Sichuan ("Savour") and La Vie En Szechuan ("La Vie").[1]  Defendant Yi Zhang was the owner of and/or Plaintiff's supervisor at both establishments up to February 6, 2018, when he sold Savour to other Defendants, including Dongmei Wei, and Xiaomen Duan.  (*See* Findings of Fact and Conclusions of Law, ECF No. 182 at 15; Default Judgment Hearing Transcript, ECF No. 226 at 27:9-11.)  Plaintiff brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), § 190 *et seq.*, seeking recovery of overtime pay, spread-of-hours pay, and penalties for wage statement/notice violations, as well as pre-judgment interest, liquidated damages, and attorneys' fees and costs.

      From July 17-19, 2023, the Honorable John P. Cronan held a bench trial on this matter, after which he found Defendants Savour Sichuan Inc., and its current managers/owners, Dongmei Wei and Weimin Hong liable for certain wages post-dating their February 2018

---

[1] Defendant La Vie En Szechuan Restaurant Corp. is the corporate entity that operated the restaurant La Vie En Szechuan.

purchase of Savour.  (*See* Findings of Fact and Conclusions of Law, ECF No. 182 at 59.)   Judge

Cronan dismissed Plaintiff's claims for unfurnished wage statements and her claims under the

FLSA.  (*Id.* at 1, 59.)  Judge Cronan also dismissed claims against other Defendants The Best

Sichuan, Inc., Xiaoman Duan, and Jie Fang, finding them to be without merit. (*See id.* at 58-59.)

Insofar as Defendants La Vie and Zhang have not appeared in this action since

November 2020, certificates of default were issued as to them. (ECF Nos. 191, 211.)  Plaintiff

then moved for default judgment against La Vie and Zhang.  Judge Cronan held a hearing on the

default motion on July 18, 2024, after which he held that Plaintiff was entitled to default

judgment against La Vie and Zhang for overtime wages and spread-of-hours pay for dates when

Plaintiff worked for Zhang at Savour and La Vie, that is, between December 2016 and February

6, 2018.  (Default Judgment Hearing Transcript, ECF No. 226 at p. 27-29.)  He then referred this

action to me for a report and recommendation on damages as to the defaulting Defendants La

Vie and Zhang (ECF No. 220), and on a motion seeking attorneys' fees and costs from the

Defaulting Defendants (Zhang and La Vie) and those Defendants found liable after the bench

trial (Savour, Dongmei Wei, and Weimin Hong).  (ECF No. 234).  Having reviewed the

submissions, I recommend that Plaintiff be awarded damages from Zhang and La Vie, as well as

attorneys' fees and costs, as set forth below.

## BACKGROUND

Defendant Yi Zhang owned two Chinese restaurants in Manhattan, Savour and La Vie.

(Plaintiff Transcript ("Pl. Tr."), ECF No. 164 at 42:1-2; 80:19-22; Finding of Fact and Conclusions

of Law, ECF No. 182 at 12.)  Plaintiff worked as a server at Savour from December 2016 to

February 6, 2018; Plaintiff also worked as a server at La Vie for two days in autumn 2017.  (*See*

Pl. Tr. at 19:15-18; 42:11-20.)  Plaintiff stopped working at Savour in February 2018 because she

traveled to China to visit her children, but she then resumed working at Savour for the new

owners several months later.[2] (Findings of Fact and Conclusion of Law, ECF No. 182 at 16.)

Between December 2016 and February 6, 2018, plaintiff worked one of the following

day and shift combinations in a given week at Savour: (1) six full-day late shifts, (2) five full-day

and one half-day late shifts; (3) six full-day early shifts, and (4) five full-day and one half-day

early shifts.  (*Id.* at 34:3-16.)  Plaintiff testified that she worked six days per week 50% of the

time, and worked five and a half days per week the other 50% of the time.  (*See* Pl. Tr. 34:25-

35:4)  She further testified that two-thirds of the time she worked the late shift, and one-third

of the time she worked the early shift.[3]  Consistent with Plaintiff's testimony and Plaintiff's

application for damages, this results in the following schedule and hours worked: one-sixth of

the time she worked six full-day early shifts per week, which amounted to 60 hours worked;[4]

one-sixth of the time she worked five full day and one half-day early shifts per week, amounting

to 55 hours worked;[5] one-third of the time she worked six full-day late shifts per week which

amounted to 62.28 hours worked;[6] and one-third of the time she worked five full-day and one

---

[2] Judge Cronan already issued liability rulings as to wages due to Plaintiff for the period between October 2018 and January 2019. (See Findings of Fact and Conclusions of Law, ECF No. 182 at 14, 58-59.) Therefore, this Report and Recommendation is limited to wages and penalties due for the period up to February 6, 2018 when Plaintiff worked for Zhang at Savour and La Vie.

[3] The Court notes that when Plaintiff testified before Judge Cronan, she stated that for the period she worked at Savour between December 2016 and February 2018, approximately two-thirds of the time she worked the late shift, and one-third of the time she worked the early shift. (Pl. Tr. At 34:4-13.)  But Plaintiff's affidavit says the reverse, namely that during the same period of time, she worked the early shift two-thirds of the time. (ECF No. 216-7 at ¶ 13.)  The Court relies on Plaintiff's testimony rather than her affidavit.

[4] The full-day early shift began at 11:00 AM and ended at 9:00 PM. (Pl. Tr. at 29:13-15.) This results in a ten-hour day, multiplied by six shifts results in 60 hours.

[5] The half-day early shift began at 11:00 AM and ended at 4:00 PM. (Pl. Tr. at 34:17-19.) This results in a five-hour shift, which, when combined with five full-day early shifts of ten hours per day, results in 55 hours.

[6] The full-day late shift was officially 12:00 PM to 10:00 PM, but Plaintiff was required to stay until all the customers left, which varied depending on the day. Sundays through Thursdays it was typically an extra twenty

half-day late shifts per week amounting to 58.28 hours worked.[7] (*See id.* at 29:15-31:6; 34:4-35:4.)

While Gao was supposed to have a one-hour break for each day she worked, she testified that she often was unable to actually take her break because she was attending to customers. (Pl. Tr. 32:22-33:14.) In addition, despite regularly working until after 10:00 PM during the late shifts, Plaintiff was only paid until 10:00 PM. In other words, Plaintiff was only ever paid for nine hours of work for a full-day shift and five hours for a half-day shift, even though she often worked through her break and stayed after 10:00 PM. (*Id.* at 37:5-38:8.)

Plaintiff asserts she was not paid the applicable overtime wage for hours worked in excess of forty in a week and was not paid spread-of-hours compensation. (*Id.* at 39:1-40:14.) From 2016 to 2017, Plaintiff attests she was paid the tipped minimum wage of $7.50 per hour for the first forty hours she worked per week and was paid $11.25 per hour for the time she was scheduled to work in excess of 40 hours. (*Id.*) In 2018, Plaintiff was paid the tipped minimum wage of $8.65 per hour for the first forty hours she worked per week and was paid $12.98 per hour thereafter. (*Id.*)

---

minutes, whereas Fridays and Saturdays it was typically an extra 30 minutes. (Pl. Tr. at 30:11-32:21.) Taking the average of these, Plaintiff worked 10.38 hours per day on average when she was working a full-day late shift, multiplied by 6 days is 62.28 hours.

[7] The half-day late shift was officially 4:00 PM to 10:00 PM but as discussed in the prior footnote, Plaintiff was required to stay until all the customers left, which on Sundays through Thursdays was typically an extra twenty minutes, whereas Fridays and Saturdays it was typically an extra 30 minutes. (Pl. Tr. at 34:19-24.) Thus, in a week where Plaintiff worked five full-day late shifts (10.38 hours per day on average) and one half-day late shift (6.38 hours on average), she would work 58.28 hours.

## I. LIABILITY AND DAMAGES FOR DEFAULTING DEFENDANTS ZHANG AND LA VIE

### Legal Standard

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (defendant's ongoing failure to appear supported failure to plead for the purpose of default entry). Rule 55 requires a two-step process for an entry of a default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). First, upon notification from the moving party, the court clerk enters a default of the party who failed to attend. *Priestley v. Headminer, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving party may apply for entry of default judgment pursuant to Rule 55(b). *Id.* A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, plaintiffs are not entitled to a default judgment as a matter of right simply because the opposing party is in default. *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Plaintiffs bear the burden to demonstrate that their uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348-49 (E.D.N.Y. 2009).

To determine whether a motion for default judgment is warranted, courts within this district look to three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-

defaulting party would suffer as a result of the denial of the motion for default judgment.

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

Here, Plaintiff has satisfied the two-step procedural requirements of Rule 55 by submitting a request for both entry of default and default judgment as to Zhang and La Vie following the issuance of the clerk's certification.  (ECF Nos. 191, 211, 215.)  Additionally, on July 18, 2024, Judge Cronan granted the default judgment motion as to liability on Plaintiff's claims for unpaid spread-of-hours pay and unpaid overtime wages under the New York Labor Law.  (ECF No. 226.)  Generally, a defendant's default is an admission of the plaintiff's well-pleaded allegations as to liability but not for purposes of determining damages.  *See Greyhound Exhibitgroup Inc.*, 973 F.2d at 158.  So, even when a defendant has defaulted, a substantive analysis of the alleged claims is necessary to determine whether the plaintiff may be awarded damages, and proof of damages is required.  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  In this case, Plaintiff submitted an affidavit and testified before Judge Cronan concerning her dates of employment, hours worked, and pay, and Plaintiff's counsel submitted contemporaneous time records reflecting time spent on this matter to demonstrate damages. (*See* ECF Nos. 216-7, 171-11.)

Although a court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2). Holding an inquest by affidavit, without an in-person court hearing, is permissible "as long as [the court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109

F.3d 105, 111 (2d Cir. 1997) (citation omitted).  In this case, Plaintiff has offered sufficient

evidentiary support through her testimony before Judge Cronan and affidavits submitted in

support of her claim for damages.  She also filed an affidavit of service of the papers on

Defendants (ECF No. 229), but Defendants have not submitted any response, nor have they

appeared in this action since November 2020.  (ECF Nos. 205, 226.)  Hence, no evidentiary

hearing is required.

### 1. *Unpaid Overtime and Spread of Hours under NYLL*

Because Judge Cronan dismissed Plaintiff's claims brought under the FLSA, the Court

calculates damages pursuant to the NYLL only.  Claims brought pursuant to the NYLL are subject

to a six-year statute of limitations.  *See Byer v. Periodontal Health Specialists of Rochester, PLLC*,

2021 WL 3276725, at *2 (2d Cir. 2021) (citing NYLL § 663).  Plaintiff's claims are timely because

Plaintiff initiated this action in March 2019 and worked for Zhang at Savour from December

2016 to February 2018 and at La Vie in the fall of 2017. (*See* ECF No. 1.)

Plaintiff bears the burden of showing that she was not properly compensated for the

hours she worked.  *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003); *see also*

*Pineda v. Masonry Const. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y 2011).  Where, as here, the

Defendants have defaulted and the Plaintiff lacks access to the employment records necessary

to prove she was not properly compensated, she may meet the burden through her recollection

by testifying or submitting an affidavit, which she has done.  *Elisama v. Ghzali Gourmet Deli Inc.*,

2016 WL 11523365, at *4 (S.D.N.Y. Nov. 7, 2016) (quoting *Santillan v. Henao*, 822 F. Supp. 2d

284, 294 (E.D.N.Y. 2011)).

### a. *Overtime*

Under NYLL, employers must pay employees "for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek." N.Y. Comp. Codes R. & Regs. Tit. 12 § § 146-1.4.  The overtime rate for tipped employees is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit.  N.Y. Comp. Codes R. & Regs. Tit. 12 § § 146-1.4.  Plaintiff received overtime pay for some of her overtime at the tip credit rate.  (Pl. Tr.  at 39:1-40:11.) However, Judge Cronan found that Plaintiff is entitled to the overtime wage rate without a deduction for the tip credit and, therefore, the Court calculates the Plaintiff's overtime rate owed using the non-tipped overtime rate of one and one-half times the employee's regular rate.  (*See* Default Judgment Hearing Transcript, ECF No. 226 at 28.)  Therefore, Plaintiff is entitled to the differential between the overtime rate she was paid and the higher overtime rate that Judge Cronan determined she was due.  Additionally, Plaintiff was not paid for all of her hours.  Plaintiff testified that she often worked during lunch, which means that the lunch hour is compensable time. (Pl. Tr. 32:22-33:14;) *See Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), *report and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc.*, No. 16CV8782AJNRWL, 2021 WL 2139441 (S.D.N.Y. May 26, 2021) ("all of the time worked during a continuous workday is compensable, save for bona fide meal breaks"); *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 116 (2d Cir. 2023) (the bona fide meal break is not met "if the employee is required to be on-call to handle whatever work arises during the lunch break.")  She also testified that she was not paid for work past her scheduled end of shift.  (Pl. Tr. at 36:6-10; 37:5-38:8 ("the hours you get paid is attached to our schedule,

our shifts . . .").)  This uncompensated time increases the hours worked in excess of forty each week.   (*See* Pl. Tr. at 37:5-38-8.)  Factoring in this additional unpaid time, there are four different types of weeks at Savour:[8] one-sixth of the time Plaintiff worked 60 hours per week, resulting in 20 hours of overtime; one-sixth of the time she worked 55 hours per week, resulting in 15 hours of overtime; one-third of the time she worked 62.28 hours per week, resulting in 22.28 hours of overtime, and one-third of the time she worked 58.28 hours per week, resulting in 18.28 hours of overtime. (Pl. Tr. at 29:15-31:6; 34:4-35:4.) To be clear, these overtime hours are inclusive of lunch hours and additional post-shift time worked.

Consistent with Judge Cronan's ruling about the appropriate rate, the overtime rates due to Plaintiff for the different years she worked at Savour are as follows:[9]

> December 1, 2016 through December 30, 2016: $13.50/hour
> December 31, 2016 through December 30, 2017: $16.50/hour
> December 31, 2017 through February 6, 2018:  $19.50/hour

However, as noted above, from 2016 to 2017, Plaintiff was paid an overtime rate of $11.25.  (Pl. Tr. at 39:1-40:11). In 2018, Plaintiff was paid an overtime rate of $12.98. (*Id.* at 40:1-11.)  The charts below detail the Court's calculations regarding the overtime differential due to Plaintiff each year from her work at Savour.[10]

---

[8] *See* footnotes 4 through 7 above for a more detailed explanation of Plaintiff's hours.

[9] In New York City, the minimum wage applicable to non-fast food employees of employers with more than 11 employees was $9 an hour from December 31, 2015 through December 30, 2016; $11 an hour from December 31, 2016 through December 30, 2017; $13 per hour from December 31, 2017 to December 30 2018. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2; N.Y. Lab. Law § 652 (McKinney). Employers of eleven or more employees are considered large employers.  N.Y. Comp. Codes R. & Regs. Tit. 12 § § 146-1.2.  From December 2016 to February 2018, Defendant Zhang employed more than eleven employees at Savour and therefore he would be considered a large employer.  (ECF No. 233 ¶ 4.)

[10] The Court notes that Plaintiff's counsel calculated overtime owed by averaging her overtime hours across the different types of weeks she worked, but the Court breaks the calculation down by the type of work week, which results in a more precise calculation.

Between December 1, 2016 and December 30, 2016, Plaintiff worked at Savour for four weeks. Because Plaintiff's work schedule involved four different types of weeks, the Court assumes she worked one type of week each for this four-week period.

**12/1/2016-12/30/2016**

| Type of Week | Weeks in Period (4 weeks) | OT Hours Worked per Week | OT Hours Paid Per Week | Applicable OT Rate | Weekly OT Paid[11] | Weekly OT Due (OT worked x applicable rate) | Weekly Underpayment (OT owed minus OT paid) | Total Underpayment (weekly underpay multiplied by number of weeks) |
|---|---|---|---|---|---|---|---|---|
| 6-day early | 1 | 20 | 14 | $13.50 | $157.50 | $270.00 | $112.50 | $112.50 |
| 5.5-day early | 1 | 15 | 10 | $13.50 | $112.50 | $202.50 | $90.00 | $90.00 |
| 6-day late | 1 | 22.28 | 14 | $13.50 | $157.50 | $300.78 | $143.28 | $143.28 |
| 5.5-day late | 1 | 18.28 | 10 | $13.50 | $112.50 | $246.78 | $134.28 | $134.28 |
| TOTAL | | | | | | | | $480.06 |

Between December 31, 2016 and December 30, 2017, Plaintiff worked at Savour for 52 weeks. The Court assumes that in this period, Plaintiff worked the late shift roughly two-thirds of the time, and worked 6 full shifts per week 50% of the time, and 5 full shifts and one half shift the other 50% of the time, consistent with her testimony.

---

[11] This reflects plaintiff's paid rate of $11.25.

12/31/2016-12/30/2017

| Type of Week | Weeks in Period (52 weeks) | OT Hours Worked per Week | OT Hours Paid Per Week | Applicable OT Rate | Weekly OT Paid[12] | Weekly OT Due (OT worked x applicable rate) | Weekly Underpayment (OT owed minus OT paid) | Total Underpayment (weekly underpay multiplied by number of weeks) |
|---|---|---|---|---|---|---|---|---|
| 6-day early | 8 | 20 | 14 | $16.50 | $157.50 | $330.00 | $172.50 | $1,380.00 |
| 5.5-day early | 8 | 15 | 10 | $16.50 | $112.50 | $247.50 | $135.00 | $1,080.00 |
| 6-day late | 18 | 22.28 | 14 | $16.50 | $157.50 | $367.62 | $210.12 | $3,439.62[13] |
| 5.5-day late | 18 | 18.28 | 10 | $16.50 | $112.50 | $301.62 | $189.12 | $3,404.16 |
| TOTAL | | | | | | | | $9,303.78 |

Between December 31, 2017 and February 6, 2018, Plaintiff worked at Savour for five weeks. The Court assumes Plaintiff worked each of the early shifts once, the six-day late shift twice, and the five-and-a-half-day late shift once during this period. This is consistent with Plaintiff's testimony that she worked the late shifts two-thirds of the time.

---

[12] This reflects plaintiff's paid rate of $11.25.

[13] The Court deducts two days of work to account for the two days Plaintiff testified she worked at La Vie during this period. Because Plaintiff did not provide detail as to how many hours she worked at Savour or La Vie during the week when she worked at La Vie, the Court assumes that Plaintiff worked at La Vie during a week in which she worked 6 full-day late shifts, and therefore Plaintiff only worked at Savour for 4 full-day late shifts that week. This would result in 1.52 overtime hours, rather than 22.28, which is a difference of 20.76 hours. The Court multiplies 20.76 hours by the applicable overtime rate ($16.50 per hour), yielding $342.54, which the Court deducts from the total underpayment figure for 6-day late weeks.

**12/31/2017-2/6/2018**

| Type of Week | Weeks in Period (5 weeks) | OT Hours Worked per Week | OT Hours Paid Per Week | Applicable OT Rate | Weekly OT Paid[14] | Weekly OT Due (OT worked x applicable rate) | Weekly Underpayment (OT owed minus OT paid) | Total Underpayment (weekly underpay multiplied by number of weeks) |
|---|---|---|---|---|---|---|---|---|
| 6-day early | 1 | 20 | 14 | $19.50 | $181.72 | $390.00 | $208.28 | $208.28 |
| 5.5-day early | 1 | 15 | 10 | $19.50 | $129.80 | $292.50 | $162.70 | $162.70 |
| 6-day late | 2 | 22.28 | 14 | $19.50 | $181.72 | $434.46 | $252.74 | $505.48 |
| 5.5-day late | 1 | 18.28 | 10 | $19.50 | $129.80 | $356.46 | $226.66 | $226.66 |
| TOTAL | | | | | | | | $1,103.12 |

Adding all three years together ($480.06 + $9,303.78 + $1,103.12) yields a total overtime owed of $10,886.96.

Although Plaintiff testified that she worked for two days at La Vie in the fall of 2017, she cannot have worked over forty hours in two days at La Vie and therefore she would not be entitled to overtime. Also, combining the hours Plaintiff worked at La Vie with the hours she worked at Savour for the purposes of calculating overtime hours would be improper because Judge Cronan denied liability for La Vie on a joint employer theory in connection with Plaintiff's

---

[14] This reflects plaintiff's paid rate of $11.25.

work at Savour. (*See* ECF No. 226 at 26:9-25.)  Thus, as noted in footnote 13, *supra*, her total

overtime at Savour was only 1.52 hours during the week she also worked at La Vie.

Therefore, Zhang is liable for unpaid overtime in the amount of **$10,886.96** for Plaintiff's

work at Savour during the period from December 1, 2016 to February 6, 2018.

### b.  *Spread of Hours*

The spread of hours is the "interval between the beginning and end of an employee's

workday."  N.Y. Comp. Codes R. & Regs. Tit. 12 § § 146-1.6.; *see Shahriar v. Smith & Wollensky*

*Rest. Grp. Inc.*, 659 F.3d 234, 241 (2d Cir. 2011); *see also Elisama*, 2016 WL 11523365, at *4.

Under the NYLL, employers are required to pay employees an extra hour's pay at the NYLL

minimum wage rate for each day the employee's spread of hours exceeds ten hours.  N.Y.

Comp. Codes R. & Regs. Tit. 12 § § 146-1.6.

During the relevant period, Plaintiff only worked more than ten hours when she worked

the full-day late shift. One-third of the time she worked six full-day late shifts which resulted in

six days where Plaintiff's spread of hours exceeded ten, and one-third of the time she worked

five full-day and one half-day late shifts per week, which amounted to five days where her

spread of hours was over ten. (Pl. Tr. at 30:11-32:21.) The final third of the time, Plaintiff

worked either 6 full-day early shifts or five full-day early shifts and one half-day early shifts, and

in either case her spread of hours did not exceed ten for any days in a week.

The charts below detail the Court's calculations regarding spread-of-hours pay owed to

Plaintiff per year for her work at Savour:

**12/1/2016-12/30/2016**

| Type of Week | Weeks in Period (4 weeks) [15] | Days per Week SOH Exceeds 10 | Applicable Minimum Wage[16] | Weekly Spread-of-Hours Pay Due | Total Spread-of-Hours Pay Due |
|---|---|---|---|---|---|
| 6-day late | 1 | 6 | $9.00 | $54.00 | $54.00 |
| 5.5-day late | 1 | 5 | $9.00 | $45.00 | $45.00 |
| TOTAL | | | | | $99.00 |

**12/31/2016-12/30/2017**

| Type of Week | Weeks in Period (52 weeks) | Days per Week SOH Exceeds 10 | Applicable Minimum Wage[17] | Weekly Spread-of-Hours Pay Due | Total Spread-of-Hours Pay Due |
|---|---|---|---|---|---|
| 6-day late | 18 | 6 | $11.00 | $66.00 | $1,188.00 |
| 5.5-day late | 18 | 5 | $11.00 | $55.00 | $968.00[18] |
| TOTAL | | | | | $2,156.00 |

**12/31/2017-2/6/2018**

| Type of Week | Weeks in Period (5 weeks) [19] | Days per Week SOH Exceeds 10 | Applicable Minimum Wage[20] | Weekly Spread-of-Hours Pay Due | Total Spread-of-Hours Pay Due |
|---|---|---|---|---|---|
| 6-day late | 2 | 6 | $13.00 | $78.00 | $156.00 |
| 5.5-day late | 1 | 5 | $13.00 | $65.00 | $65.00 |
| TOTAL | | | | | $221.00 |

---

[15] Consistent with the assumptions the Court made above, the Court assumes that in this four-week period Plaintiff worked each type of week once, which results in two weeks in which Plaintiff worked more than ten hours in a day.).

[16] *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2; N.Y. Lab. Law § 652 (McKinney).

[17] *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2; N.Y. Lab. Law § 652 (McKinney).

[18] The Court deducts two-days' worth of spread-of-hours pay to account for the two days Plaintiff worked at La Vie in autumn 2017, from the initial total of $990.00.

[19] The Court makes the same assumptions concerning which weeks Plaintiff worked in this period as detailed above when calculating Plaintiff's overtime pay owed.

[20] *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2; N.Y. Lab. Law § 652 (McKinney).

Adding all three years together ($99.00 + $2,156.00 + $221.00) yields a total spread-of-hours pay owed for Plaintiff's work at Savour in the amount of $2,476.00.

As to La Vie, the applicable minimum wage for a small employer[21] between December 31, 2016 and December 30, 2017 was $10.50.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2. As explained above, the Court assumes Plaintiff worked two full-day late shifts at La Vie, which would result in a spread of hours exceeding ten hours on each of the two days. Because her applicable minimum wage at La Vie was $10.50, Plaintiff is owed $21.00 in spread-of-hours pay. Because Zhang was Plaintiff's employer during the relevant period, including the two days she worked at La Vie as he owned La Vie and directed Plaintiff to work there, Zhang can also be liable for unpaid spread-of-hours pay for Plaintiff's work at La Vie. *See Ruixuan Cui v. E. Palace One, Inc.*, No. 17 Civ. 6713 (PGG), 2019 WL 4573226, at *6 (S.D.N.Y. Sept. 20, 2019) ("[T]he [NYLL] broadly defines [employer] as encompassing any 'person employing any [employee]'[.]") (internal citations omitted); N.Y. Lab. Law § 190 (McKinney).

Defendant Zhang is liable for unpaid spread-of-hours pay in the amount of **$2,476.00** for Plaintiff's work at Savour during the period from December 1, 2016 to February 6, 2018. La Vie and Zhang are liable for unpaid spread-of-hours pay in the amount of $**21.00** for the two days Plaintiff worked at La Vie in the fall of 2017.

---

[21] Plaintiff could not recall the number of employees who worked at La Vie during the two days she worked there and therefore the Court assumes it was fewer than eleven, making La Vie a small employer. N.Y. Comp. Codes R. & Regs. Tit. 12 § § 146-1.2.

### 2.  *Liquidated Damages*

New York Labor Law expressly provides that employees are entitled to recover all

unpaid wages and liquidated damages at a rate of 100 percent of the wages due.  *See* N.Y. Lab.

Law § 198(1-a); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y.

2014).  Under the NYLL, "liquidated damages are presumed unless defendants can show

subjective good faith*." Zubair v. EnTech Eng'g, P.C.*, F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012);

*see* N.Y. Lab. Law § 663(1).  As Zhang and La Vie have defaulted, they have not established the

good faith necessary to rebut the liquidated damages presumption.  Furthermore, Judge

Cronan found their violations to be willful.  (ECF No. 226 at 30-31.)  Plaintiff is therefore entitled

to liquidated damages.  *Galeana*, 120 F. Supp. 3d at 317 ("[D]efendants' default precludes a

showing of good faith or reasonable belief that they acted in accordance with the law.")

Accordingly, Defendant Zhang is liable for liquidated damages in the amount of **$13,362.96** and

La Vie and Zhang are liable for liquidated damages in the amount of **$21.00**.

### 3.  *Pre-Judgment Interest*

Plaintiff is similarly entitled to pre-judgment interest under the NYLL.  *See* N.Y. Lab. Law

§ 663; *see also Fermin*, 93 F. Supp. 3d at 48 ("In contrast to the FLSA, the NYLL permits an award

of both liquidated damages and prejudgment interest.").  "Prejudgment interest is calculated

on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the

state law."  *Fermin*, 93 F. Supp. 3d at 49 (quoting *Mejia v. East Manor USA Inc.*, No. 10 CV 4313,

2013 WL 3023505, at *8 n.11 (E.D.N.Y. May 17, 2013)).

The statutory pre-judgment interest rate in New York is nine percent per annum.  N.Y.

C.P.L.R. § 5004.  Interest is calculated from "from the earliest ascertainable date the cause of

action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." *Id.* § 5001(b). Courts applying N.Y. CPLR § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49.

The midpoint of a plaintiff's employment during the statutory damages period is a reasonable intermediate date for purposes of calculating prejudgment interest. See *Fermin*, 93 F. Supp. 3d at 49; *see also Zheng Ming Chen v. Y Café Ave B Inc.*, 18-CV-4193 (JPO), 2019 WL 2324567, at *5 (S.D.N.Y. May 30, 2019). The midpoint between December 1, 2016 and February 6, 2018 is July 5, 2017. Consequently, for Plaintiff's work at Savour, she should receive prejudgment interest on her unpaid wages under the NYLL applied from July 5, 2017 to the entry of judgment. For Plaintiff's work at La Vie in the fall of 2017, the Court assumes she worked at La Vie on November 15, 2017 and November 16, 2017, and therefore the damages were incurred on the first of those days for the purposes of calculating interest.

Accordingly, I recommend that should this Report and Recommendation be adopted, the Clerk of Court compute pre-judgment interest from the midpoint date to the date this Report and Recommendation is adopted as follows:

| Employer | Date Incurred/Midpoint Date | Unpaid Wages Damages | Calculate 9% per annum | Per Diem Rate |
|---|---|---|---|---|
| Zhang | July 5, 2017 | $13,362.96 | .09/365 | $3.29 |
| La Vie | November 15, 2017 | $21.00 | .09/365 | $0.005 |

### 4. *Post-Judgment Interest*

Plaintiff has not provided any argument for post-judgment interest.  Nevertheless, "the very language of the 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  *Duffy v. Oyster Bay Indus., Inc.*, No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259749 (E.D.N.Y. June 2, 2011); see generally *Begum v. Ariba Disc., Inc.*, No. 12 Civ. 6620(DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case.  In *Tacuri v. Nithun Constr. Co.*, No. 14 Civ. 2908(CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015), the court awarded the plaintiffs post-judgment interest, despite their failure to request post-judgment interest, on all sums awarded concerning their FLSA and NYLL wage-and-hours claims.  Therefore, I respectfully recommend that Plaintiff also be awarded post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.  *See id.*

## II. ATTORNEYS' FEES AND COSTS FOR ALL DEFENDANTS

### 1. *Attorneys' Fees*

On August 8, 2024, Plaintiff filed a motion for attorneys' fees as to all the work Plaintiff's counsel, Troy Law, PLLC, ("Troy Law") has performed in this action.  (ECF No. 223.)  The NYLL provides for an award of reasonable attorneys' fees to successful plaintiffs.  *See* NYLL § 198(1-a), 663(1).  Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case."

*Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. County of Albany & Albany Cnty. Bd. Of Elections*, 522 F.3d 182,

183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  "The

reasonable hourly rate is the rate a client would be willing to pay," bearing in mind that a

"reasonable, paying client wishes to spend the minimum necessary to litigate the case

effectively."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an attorney's hourly rate is

reasonable, courts may rely on their own knowledge of a firm's hourly rates.  *See Gurung v.*

*Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters*

*Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).  "In this district, courts

generally award experienced wage-and-hour attorneys between $300.00 to $400.00 per hour."

*Victor v. Sam's Deli Grocery Corp.*, No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *14 (S.D.N.Y

Aug. 25, 2022).  *See also Surdu v. Madison Glob.*, LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379,

at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases concerning litigators with a decade or more of

experience); *see also Pastor v. Alice Cleaners, Inc.*, No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at

*7–8 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in

wage-and-hour cases in this district).

   To assess whether the number of hours billed by the attorney is reasonable, courts

consider "whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

Plaintiff bears the burden of producing "contemporaneous time records indicating, for each

attorney, the date, the hours expended, and the nature of the work done."  *Fisher v. SD Prot.*

*Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)(internal citations omitted).

Furthermore, district courts have "considerable discretion" in determining the amount of a fee award. *Arbor Hill*, 522 F.3d at 190. *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Nonetheless, when awarding attorneys' fees, the court must also "clearly and concisely state reasons supporting the award." *Tackie v. Keff Enters. LLC*, No. 14–CV–2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (citing *Hensley*, 461 U.S. at 437).

Attorneys John Troy, Aaron Schweitzer, and Tiffany Troy performed the legal work on this matter, and were assisted by managing clerk Preethi Kilaru. Mr. Troy has been practicing law for more than thirty years and has focused almost exclusively on labor and employment cases; he has litigated hundreds of wage-and-hour actions. (Declaration of John Troy ("JT Decl."), ECF No. 224 at ¶¶ 20, 23-24.) Mr. Troy requests an hourly rate of $450 and he spent 18.7 hours on this matter, totaling $8,415.00. (*Id.* at ¶¶ 34, 68.) Mr. Schweitzer has been practicing law for six years, focusing solely on labor and employment cases; he has litigated nearly one hundred wage-and-hour actions. (*Id.* at ¶ 40.) Mr. Schweitzer requests a full rate of $300 per hour and a half rate of $150 per hour. (*Id.* at ¶ 68.) He worked 67.02 hours at his full rate and 10.01 hours at his half rate on this matter, totaling $21,607.50. (*Id.*) Ms. Troy has been practicing law for about three years and has experience litigating labor and employment cases. (*Id.* at ¶ 52.) Ms. Troy requests an hourly rate of $200 and she spent 13.13 hours on this matter, totaling $2,626.00. (*Id.* at ¶ 68.) Ms. Kilaru has been working as a managing clerk at Troy Law for six years. (*Id.* at 64.) Ms. Kilaru requests an hourly rate of $150 and she spent 11.47 hours on this matter, totaling $1,720.50. (*Id.* at ¶ 68.) Plaintiff thus seeks payment for these attorneys' work on this matter for a total of $34,369. (*Id.*)

Having reviewed the contemporaneous billing records for Plaintiff's case, including the hours expended, dates of work, and descriptions of the work performed, the time spent was reasonable. However, the rates requested by Mr. Troy, Ms. Troy, and Ms. Kilaru are unreasonable.

Mr. Troy requests an hourly rate of $450, yet courts in both the Southern and Eastern Districts of New York have consistently reduced his requested rates. *See e.g.*, *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14- CV-02451 (DF), 2021 WL 6205861, at *3 (S.D.N.Y. Dec. 29, 2021) ("[T]his Court has … previously scrutinized [John Troy's] billing rates, and, in other cases, has determined that his requested rates should be reduced in light of the consistently poor quality of his work[.]"); *see also Wang v. XBB, Inc.*, No. 18CV7341PKCST, 2023 WL 2614143, at *4 (E.D.N.Y. Mar. 23, 2023) (rejecting John Troy's request for an hourly rate of $650, and awarding a rate of $400 instead), *reconsideration denied*, No. 18CV7341PKCST, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024); *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-CV-7342, 2023 WL 5423982, at *8 (S.D.N.Y. Aug. 4, 2023) (rejecting John Troy's request for $650 hourly rate, and awarding $400 instead), *report and recommendation adopted*, 2023 WL 5390985 (S.D.N.Y. Aug. 22, 2023). While this case went to trial, Mr. Troy did not try the case or appear before the Court. Instead, he drafted status reports and filed certain motions, and the motions were not of high quality. I recommend that the Court award a slightly lower rate of $425 in line with what Mr. Troy has recently been awarded in other cases in this District. *See e.g.*, *Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 458 (S.D.N.Y. March 29, 2024).

Mr. Schweitzer requests a full rate of $300 per hour and a half rate of $150 per hour; he requests the full rate for legal work and the half rate for travel time. Plaintiff cites cases in

which Mr. Schweitzer was awarded hourly rates ranging from $225 to $400, although some of the case are indicated to be oral rulings. In the present case, an hourly rate on the higher end of that spectrum is warranted: he performed the majority of the work on this matter and represented Plaintiff at trial and received a favorable outcome. For these reasons, I recommend awarding the requested hourly rate of $300 (and $150 half rate), which is consistent with awards in his other cases.

Ms. Troy requests an hourly rate of $200. Courts in this District have repeatedly awarded lower amounts to Ms. Troy, generally $150 per hour. *See Feng*, 2727 F. Supp. 3d at 459 (collecting cases in which District Courts have awarded Ms. Troy $150 per hour). Ms. Troy's work on this matter was not solely of a legal nature. Time records indicate that she completed several non-legal tasks, such as coordinating with the interpreter and translating documents. For the legal tasks she performed, $150 per hour is a reasonable rate given her relatively few years of experience; however, for the non-legal tasks she performed, Ms. Troy should instead be awarded an hourly rate of $100, consistent with paralegal/clerk rates. *See e.g.*, *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14CV02451 (DF), 2021 WL 6205861, at *4 (S.D.N.Y. Dec. 29, 2021) (awarding Tiffany Troy $100 per hour for performing paralegal or clerk-type work); *Yuan v. & Hair Lounge Inc.*, No. 18CV11905ATBCM, 2023 WL 4534872, at *7 (S.D.N.Y. June 28, 2023) (awarding Tiffany Troy $75 per hour for translation/interpretation services and awarding paralegal on case $75 per hour), *report and recommendation adopted*, No. 18CIV11905ATBCM, 2023 WL 4535085 (S.D.N.Y. July 13, 2023).

Ms. Kilaru requests an hourly rate of $150. Courts in this District have awarded a lower amount. *See Feng*, 727 F. Supp. 3d at 459-60 (collecting cases in which District Courts have

awarded Ms. Kilaru between $70 and $75 per hour); *Rodpracha*, 2021 WL 6205861, at *4 (awarding $100 per hour to Ms. Kilaru).  Because Ms. Kilaru was not performing legal work, she should be paid at a rate lower than a junior associate and more in line with rates awarded to her in other cases in this District.  Thus, I recommend she be awarded $100 per hour.

Based on these recommendations, I calculate the recommended attorneys' fees award as follows:

| Individual | Hourly Rate | Hours Worked | Fees |
|---|---|---|---|
| John Troy | $425 | 18.70 | $7,947.50 |
| Aaron Schweitzer (full rate) | $300 | 67.02 | $20,106.00 |
| Aaron Schweitzer (half rate) | $150 | 10.01 | $1,501.50 |
| Tiffany Troy (legal) | $150 | 9.21 | $1,381.50 |
| Tiffany Troy (non-legal) | $100 | 3.92 | $392.00 |
| Preethi Kilaru | $100 | 11.47 | $1,147.00 |
| **TOTAL** | | | **$32,475.50** |

I therefore recommend awarding Plaintiff attorneys' fees in the amount of **$32,475.50**. The legal work performed as to La Vie was likely negligible and therefore I do not recommend holding La Vie liable for attorneys' fees.  Much of the preliminary work on the case related to all defendants.  Only the time spent on the default motion is truly solely attributable to the defaulting Defendants.  Plaintiff's counsel, however, does not break out the time spent between the appearing and defaulting Defendants.  Because significantly more time was spent performing legal work for the appearing Defendants rather than the defaulting Defendants,

including the conduct of a trial, I recommend that the appearing Defendants be responsible for 75% of the attorneys' fees, which is **$24,356.62**.  I recommend Zhang be responsible for the remaining 25% of attorneys' fees, which is **$8,118.88**.

### 2. Costs

The NYLL entitles prevailing plaintiffs in wage-and-hour actions to recover costs.  NYLL § 663(1).  "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Fisher*, 948 F.3d at 600 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Here, Troy Law seeks to recover the printing and mailing of the notice of pendency ($48.25), interpretation services at trial ($546.25), and transcription services ($101.20).  These types of costs are generally considered recoverable.  *See De Jesus v. Sea Crest Diner-Restaurant*, No. 17-CV-275 (ADS)(SIL), 2018 WL 3742778, at *12 (E.D.N.Y. May 7, 2018) (observing that costs associated with service of process, postage, translation and transcription are generally recoverable).  However, the fee applicant must "submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  Here, Troy Law only submitted an invoice for the interpretation services, but failed to include documentation of the printing or mailing costs, or the transcription costs.  Accordingly, I recommend awarding Plaintiff costs in the amount of $546.25.  Because the interpretation services occurred at the trial before Judge Cronan, I recommend the appearing Defendants be liable for these costs.

## CONCLUSION

For the reasons set forth above, I recommend that Plaintiff be awarded the amounts comprised of unpaid overtime wages, spread of hours, and liquidated damages for her work at Savour from December 1, 2016 to February 6, 2018, as delineated in the below chart.  I also recommend awarding Plaintiff attorneys' fees in the amount of **$32,475.50**, and costs in the amount of **$546.25**, divided between the appearing Defendants and Zhang as described above. Additionally, I recommend the Clerk of Court compute pre- and post-judgment interest consistent with this Report and Recommendation.  Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service of the same on the docket by no later than **January 3, 2025**.

**Owed by Zhang:**

| | |
|---|---|
| Overtime and Spread of Hours | $13,362.96 |
| Liquidated Damages | $13,362.96 |
| **TOTAL:** | **$26,725.92** |

**Owed by La Vie and Zhang:**

| | |
|---|---|
| Spread of Hours | $21.00 |
| Liquidated Damages | $21.00 |
| **TOTAL:** | **$42.00** |

Dated:  December 18, 2024

       New York, NY

                                      Respectfully submitted,

                                     _____

                                     KATHARINE H. PARKER
                                     United States Magistrate Judge

## NOTICE

Plaintiff shall have fourteen days and Defendants shall have seventeen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C)(mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).

Plaintiff shall have fourteen days to serve and file any response. Defendants shall have seventeen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John P. Cronan at the United States Courthouse, 500 Pearl St., New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).